CLERK U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS 2018 FEB 12  AM 10: 49
LUBBOCK DIVISION

DEPUTY CLERK ___BMG____

| | | |
|---|---|---|
| HELEN ANN DODSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:16-CV-269-BQ |
| | ) | ECF |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Helen Ann Dodson seeks judicial review under 42 U.S.C. § 405(g) of the Acting Social Security Commissioner's decision denying her application for disability insurance benefits (DIB). The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. The parties did not unanimously consent to proceed before a magistrate judge. The undersigned has considered the parties' briefing and arguments, the administrative record, and applicable law, and in accordance with the order of transfer, files this report and recommends that the district court affirm the Commissioner's decision.

### I.    Statement of the Case

Dodson filed an application for DIB on July 29, 2014, alleging a disability onset date of January 12, 2012. The Social Security Administration (SSA) initially denied her application on October 30, 2014, and again upon reconsideration on December 9, 2014. Tr. 12. Dodson subsequently requested review by an administrative law judge (ALJ). Represented by counsel, Dodson appeared and testified before an ALJ on April 27, 2015. Tr. 33. A vocational expert (VE) also testified at the hearing. *Id.*

1

The ALJ determined on May 27, 2015, that Dodson was not disabled because she could perform past relevant work. Tr. 26.  The Appeals Council denied Dodson's request for review on October 12, 2016. Tr. 1.  As a result of this denial, the ALJ's decision became the Commissioner's final decision and is therefore properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II.    <u>Standard of Review</u>

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether:  (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2012); *see e.g.*, *Higginbotham*, 405 F.3d at 335.  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir.1988)).  If substantial evidence supports the Commissioner's findings, they are treated as conclusive and will be affirmed.  42 U.S.C. § 405(g) (2012); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

2

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A) (2012). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III.    Facts

Dodson claims she became disabled on January 12, 2012, due to myriad health issues. Tr. 149. She lives with her husband and relies on him for support. Tr. 39–40. Dodson obtained a GED and attended some college. Tr. 39. She has previous work history as an office coordinator and assistant manager. Tr. 40–42.

Dodson had originally filed an application for benefits on January 12, 2012; however, the Commissioner denied her application on April 24, 2012, and Dodson did not appeal the decision,

3

rendering it final. Tr. 13. The ALJ noted that the doctrine of *res judicata* applies when the SSA has made a previous decision involving a claimant's rights on the same facts and issues and it has become final. *Id.* The ALJ determined *res judicata* applied to Dodson's prior application, and any claim for benefits between January 12 and April 24, 2012, because Dodson had presented no new evidence, and no change in the law had occurred concerning the facts and issues ruled upon in her prior application. *Id.* Therefore, the ALJ administratively amended Dodson's claimed onset date to April 25, 2012. *Id.*

The ALJ found that Dodson has the following severe impairments: obesity; degenerative disc disease with mid-back and low-back pain, lumbar spondylosis, failed back syndrome; diabetes mellitus with associated peripheral neuropathy; osteoarthritis with chronic knee pain and history of arthroscopic surgery; hypertension with history of abnormal EKG but normal stress test; restless leg syndrome; and history of sleep apnea. Tr. 16. The ALJ also found that Dodson's hypercholesterolemia, depression, anxiety disorder, and social phobia are non-severe, and Dodson did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 16–20. Following step three, the ALJ assessed Dodson's residual functional capacity (RFC) and found that she has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following abilities and restrictions:

> She can lift ten pounds occasionally and less than ten pounds frequently as well as sit for slightly more than 6 hours and stand or walk for slightly less than 2 hours in an 8-hour workday. She must use a cane for ambulation. She can occasionally operate foot controls. She can never climb ramps, stairs, ladders, ropes, or scaffolds and never kneel, crouch, or crawl but can occasionally balance and stoop. She must avoid work at unprotected heights or with hazardous moving machinery.

Tr. 20. Relying on the testimony of a VE, the ALJ concluded that Dodson is capable of performing past relevant work as a billing clerk and secretary. Tr. 25–26. Accordingly, the ALJ determined

that Dodson has not been disabled from the amended onset date through the date of the decision. Tr. 26.

Dodson argues on appeal that the ALJ erred by failing to:  (1) properly weigh the medical opinion evidence; (2) include any mental limitations in the RFC despite the ALJ finding the existence of some limitations; and (3) properly evaluate Dodson's credibility.  The court examines each contention in turn.

### IV.    Discussion

**A. The ALJ did not err in according little weight to Dodson's treating physician's medical opinions and "great weight" to the SAMCs' medical opinions.**

> ### 1.  The ALJ properly weighed the medical opinions of Dr. Dunn, Dodson's treating physician.

Dodson argues the ALJ's RFC determination is flawed because the ALJ did not properly weigh medical evidence in the record.  Pl.'s Mem., at 4–14; Pl's Reply Mem., at 1–3 [hereinafter Pl.'s Reply].  Specifically, Dodson asserts the ALJ erred by giving little weight to the medical opinions (physical and mental) of her treating physician, Dale Dunn, M.D, without providing a thorough analysis of the factors set forth in 20 C.F.R. § 404.1527(c). Pl.'s Mem., at 8, 15.  She also claims the ALJ's failure to either re-contact Dr. Dunn or order a consultative examination is reversible error.

In response, the Commissioner maintains that the ALJ properly considered the 20 C.F.R. § 404.1527(c) factors when weighing Dr. Dunn's opinions.  Def.'s Resp., at 2.  The Commissioner further contends that the ALJ correctly assigned little weight to Dr. Dunn's opinions because they consisted of check-the-blank forms that typify the "'brief and conclusory' statements an ALJ may disregard under the good cause exception to the treating physician rule." *Id.* at 4.

### a. *The ALJ did not err in giving Dr. Dunn's check-the-box opinions little weight.*

Generally, a treating physician's opinion on the "issue(s) of the nature and severity" of a claimant's impairments that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record will have "controlling weight" in the disability determination. 20 C.F.R. § 404.1527(c) (2017); *see also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). The ALJ, however, is free to reject any medical opinions when: (1) the evidence supports a contrary conclusion; (2) the opinions are conclusory; or (3) such opinions are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Newton*, 209 F.3d at 455. Appellate courts, including the Fifth Circuit, have determined that checklist opinions unsupported by or inconsistent with the medical records typify the type of brief and conclusory testimony not entitled to considerable weight. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony. . . . [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'"); *Peck v. Barnhart*, 214 F. App'x 730, 738 (10th Cir. 2006) (finding the ALJ provided legitimate reasons for rejecting doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the treatment notes); *Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001) (explaining that "the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-the-box form when it was contradicted by evidence in the record); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which

a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect. . . ."); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.").

In this case, the record contains three check-the-blank questionnaires completed by Dr. Dunn expressing his opinion as to Dodson's mental and physical limitations. *See* Tr. 608–10 (addressing Dodson's depressive disorder); Tr. 612–14 (concerning Dodson's physical limitations); Tr. 619–21 (regarding Dodson's anxiety disorder). Specifically, Dr. Dunn's opinions in the questionnaires consist of a series of check marks and circled numbers indicating the extent to which he considers Dodson impaired. Tr. 608–10, 612–14, 619–21. Dr. Dunn's answers, however, provide no additional medical evidence supporting his conclusory determinations. *See* Tr. 610 (Dr. Dunn listed only "anxiety D/O" and "social phobia" in the remarks section); Tr. 616 (Dr. Dunn simply listed "severe depression" in the remarks section); Tr. 621 (Dr. Dunn left the remarks section of the questionnaire blank). The ALJ gave little weight to these check-the-blank questionnaires because she found that the opinions expressed by Dr. Dunn, finding "profoundly limiting restriction[s]," were otherwise unsupported and inconsistent with the treatment and objective evidence contained in the record. Tr. 17, 23. Because Dr. Dunn failed to provide any explanation supporting his conclusions, the ALJ did not err in choosing to assign little weight to such opinions. *See DeJohnette v. Berryhill*, 681 F. App'x 320, 321–22 (5th Cir. 2017) ("The ALJ was well within his discretion to conclude that Dr. Agarwal's checking a single box on a single form without any supporting medical evidence did not outweigh the other substantial record evidence supporting a finding of no disability."); *Holifield v. Astrue*, 402 F. App'x 24, 26 (5th Cir.

2010) (concluding that the ALJ did not err in discounting treating physician's opinions that consisted of a series of check marks on forms because they were conclusory and unsubstantiated by the record evidence); *Roberts v. Colvin*, No. 3:12–cv–397 HTW–LRA, 2013 WL 4678556, at *4–6 (S.D. Miss. Aug. 30, 2013) (finding the ALJ did not err in assigning treating physician's check-the-box form opinions little weight because the opined limitations within them were not supported by the treatment records).

### b.  The ALJ properly considered the 20 C.F.R. § 404.1527(c) factors before giving Dr. Dunn's opinions little weight.

Dodson also contends the ALJ improperly disregarded Dr. Dunn's opinions without sufficient justification. Pl.'s Mem., at 8–9. Specifically, Dodson asserts the ALJ failed to provide a thorough analysis of the 20 C.F.R. § 404.1527(c) factors before giving little weight to Dr. Dunn's opinions. *Id.* at 8–9, 15–17.

The Fifth Circuit held in *Newton v. Apfel* that "an ALJ is required to consider each of the [§ 404.1527(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456; *see also* § 404.1527(c) (listing factors ALJ must consider in giving weight to a physician's opinion). The factors include: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 456; § 404.1527(c). The ALJ must apply these factors and articulate good reasons for the weight assigned to a treating source's opinion, but she need not specifically discuss each factor. *See* § 404.1527(c)(2); *see also Johnson v. Astrue*, No. 3-08-CV-1488-BD, 2010 WL 26469, at *4 (N.D. Tex. Jan. 4, 2010) ("The ALJ need not recite each factor as a litany in every case.").

When discussing Dodson's physical (Tr. 20–25) and mental (Tr. 16–19) limitations, the ALJ, in accordance with *Newton*, properly discussed the statutory factors listed in § 404.1527(c). Although the ALJ did not sequentially examine each factor, her reasoning and analysis strongly support her decision to give Dr. Dunn's opinions little weight. In direct contrast to Dodson's argument that the ALJ failed to mention the nature of Dodson's treatment relationship with Dr. Dunn and the frequency with which she visited him (i.e., factors one, two, and three), the record affirmatively reflects that the ALJ specifically addressed these factors. The ALJ (1) recognized that Dr. Dunn had been Dodson's primary care physician since 2010, and (2) examined the frequency and nature of Dodson's visits with Dr. Dunn, as she summarized each of Dr. Dunn's relevant examinations of Dodson when she discussed the substantial evidence supporting her decision. Tr. 16, 23–25.

More significantly, the ALJ's application of factors four, five, and six also resulted in her according little weight to Dr. Dunn's opinions. Considering factors four and five, under which the ALJ evaluates the supportability and consistency of a physician's opinion, the ALJ stated that Dr. Dunn's treatment records did not support the severe limitations he found, and that Dr. Dunn's opinions "appear to be based solely on the claimant's subjective reports," which the ALJ did not find fully credible. Tr. 17, 21, 23. Additionally, the ALJ noted that Dr. Dunn did not cite to any medical evidence (i.e., specific clinical findings or diagnostic tests) to support his opinion on the severity of Dodson's impairments in the check-the-blank questionnaires (i.e., factor four). Tr. 17, 23. Furthermore, Dr. Dunn is a general physician rather than a specialist (i.e., factor six). *See* § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Accordingly, in consideration of the § 404.1527(c) factors, the ALJ did not err in giving little

weight to Dr. Dunn's physical and mental limitation opinions. *See Zimmerman v. Astrue*, 288 F.

App'x 931, 936 (5th Cir. 2008) (finding that the ALJ's discussion showed he considered the

*Newton* factors when he noted the evidence supporting and opposing the opinion, and the

inconsistency of the opinion with the record as a whole); *Spellman v. Shalala*, 1 F.3d 357, 364–65

(5th Cir. 1993) (holding that it was proper to reject a treating physician's opinion that the claimant

could not perform sedentary work, because the opinion was inconsistent with evidence of the

claimant's everyday activities and with medical records).

> ### c. *The record before the ALJ did not require her to re-contact Dr. Dunn for clarification of his opinions or otherwise seek additional information from another source.*

Next, Dodson claims that the ALJ's failure to re-contact Dr. Dunn or order a consultative

examination constitutes reversible error. Pl.'s Mem., at 12–14, 19. Dodson asserts that because

the ALJ did not accord Dr. Dunn's opinions controlling weight and "the record contains no other

medical opinion from a treating or examining source," the ALJ was required to seek clarification

or additional evidence from Dr. Dunn or another doctor. Pl.'s Mem., at 12–14, 19. The

Commissioner contends no reversible error occurred because the ALJ reviewed sufficient

information to make her determination and considered the findings of consultative examiner

George Lindsey, D.O., who examined Dodson on two different occasions. Def.'s Resp., at 5.

SSA regulations provide no support for, and in fact specifically reject, Dodson's position.

Under 20 C.F.R. § 404.1520b, the ALJ "*may* recontact [claimant's] medical source" or "*may*

request [that claimant] . . . undergo a consultative examination" if she finds the record contains

insufficient evidence to determine whether the claimant is disabled. § 404.1520b(b) (emphasis

added); *see also Perry v. Colvin*, No. 3:13-CV-2252-P, 2015 WL 5458925, at *7 (N.D. Tex. Sept.

17, 2015) ("[T]he ALJ *may* re-contact a treating physician or other medical source if there is

insufficient evidence to determine whether the claimant is disabled.") (emphasis added)); *accord*

*Jones v. Colvin*, No. 4:13-CV-818-A, 2015 WL 631670, at *7 (N.D. Tex. Feb. 13, 2015) (accepting

magistrate judge's recommendation recognizing that, effective March 26, 2012, new permissive

regulation (i.e., § 404.1520b) replaced the former mandatory requirement of § 404.1512(e) applied

in *Newton*). Stated more simply, the ALJ may, but is not required to, re-contact a medical source

under § 404.1520b. This regulation was in effect when the ALJ issued her decision on May 27,

2015; therefore, the law did not mandate that the ALJ re-contact Dr. Dunn.

     Dodson's argument also fails because the record contains sufficient evidence to conclude

that Dodson is not disabled. The ALJ had substantial evidence upon which she could make a

disability determination, after weighing the record evidence, thereby making it unnecessary to re-

contact Dr. Dunn or otherwise obtain additional consultative examinations. Although the ALJ

gave little weight to Dr. Dunn's conclusory check-the-blank limitation opinions, the ALJ

considered Dr. Dunn's treatment notes (and those from Dr. Lindsey's consulting examinations),

which support her conclusion that Dodson is not disabled. For example, the records indicate Dr.

Dunn has conservatively managed Dodson's depression, diabetes, and hypertension since 2010.

Tr. 333, 339, 532, 536, 539, 583, 617. At two separate consultative examinations with Dr. Lindsey,

Dodson exhibited a reduced range of motion in her lumbar spine, but could rise from a seated

position and propel herself onto an examining table, the second time with assistance from a cane.

Tr. 418–20, 573. Dr. Lindsey also observed that Dodson exhibited a normal ability to reach, finger,

and feel, and that Dodson is able to ambulate with the assistance of a cane and a knee brace on her

right knee. Tr. 420, 573–74. At several appointments with Dr. Dunn, Dr. Dunn noted Dodson

was fully oriented, showed appropriate affect and demeanor, and exhibited good judgment and

insight. Tr. 418, 559, 562, 579. Dr. Dunn's treatment records also show that despite Dodson's

complaints of back pain, Dr. Dunn's only remarkable finding on several visits was Dodson's limp. Tr. 552–53, 555, 562. Dr. Dunn also found on two separate occasions that Dodson had fully normal physical evaluations. Tr. 579, 582. Thus, the ALJ relied on substantial record evidence to determine Dodson is not disabled.

Such circumstances do not warrant re-contacting a doctor or obtaining any other additional evidence. *See Guevara v. Colvin*, No. 4:15–CV–676–A, 2016 WL 2866220, at *6 (N.D. Tex. Apr. 25, 2016) (noting § 404.1520b is discretionary and finding that the ALJ did not err in failing to re-contact treating physician where evidence was more than sufficient to allow the ALJ to properly assess claimant's disability). Based on the record before the court, Dr. Dunn's failure to support his opinions with sufficient evidence does not mandate that the ALJ re-contact Dr. Dunn to explain his opinions. *See Klaus v. Colvin*, No. 4:15-CV-0593-Y-BL, 2016 WL 4573878, at *12 (N.D. Tex. Aug. 4, 2016) (holding that § 404.1520b(c) did not require ALJ to re-contact claimant's treating physician where record contained sufficient evidence to conclude claimant was not disabled).

For the foregoing reasons, the district court should find no basis to reverse the decision of the Commissioner based upon the issues raised by Dodson concerning the weight given to Dr. Dunn's opinions.

### 2. The ALJ did not err in assigning the SAMCs' opinions "great weight."

Dodson asserts that the ALJ gave improper weight to the opinions of non-treating physicians by not explaining why she gave the SAMCs' opinions "great weight." Pl.'s Mem., at 13. Dodson also claims the ALJ failed to acknowledge a significant distinction between the SAMCs' physical RFCs and the ALJ's own RFC—that the SAMCs' "RFC did not comport with the Agency's full-time work rule" (*id.*), i.e., a claimant must be able to perform sustained work

activity for eight hours a day, for five days a week, or an equivalent work schedule to not be considered disabled.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987)).  The task of weighing the evidence is the province of the ALJ, and the ALJ has the discretion to assign a relative weight to each piece of evidence. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

Here, the ALJ assigned significant weight to the SAMCs' opinions that were consistent with her RFC determination, which found Dodson to not be impaired to the extent suggested by Dr. Dunn.  Tr. 22.  Further, the ALJ noted that the SAMCs' opinions were similar to the RFC "assessed in this case with the exception of the current addition of foot control limitations and the use of a cane when walking."  Tr. 22.  In a physical RFC assessment, SAMC Randal Reid, M.D., opined that Dodson could occasionally lift and/or carry ten pounds, frequently carry less than ten pounds, stand and/or walk slightly less than two hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday.  Tr. 66.  Dr. Reid also noted that Dodson had postural limitations and could only occasionally climb, balance, stoop, crouch, or crawl.  Tr. 66–67.  After reviewing Dodson's records, SAMC Yvonne Post, D.O., determined that Dodson could perform sedentary work, and opined that Dodson could occasionally lift and/or carry ten pounds, frequently carry less than ten pounds, stand and/or walk slightly less than two hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday.  Tr. 78–80.  Like Dr. Reid's assessment, Dr. Post also found Dodson had postural limitations and could only occasionally climb, balance, stoop, crouch, or crawl.  Tr. 78.  The ALJ relied on these opinions in determining

Dodson's RFC, limiting her to sedentary work in which she can "sit for slightly more than 6 hours and stand or walk for slightly less than 2 hours in an 8-hour workday." Tr. 22.

Without citing any authority for the proposition, Dodson argues the ALJ erred by failing to acknowledge an alleged "significant distinction" between her assessed RFC and the SAMCs' RFCs, which according to Dodson precludes her from working full-time. Pl.'s Mem., at 11, 13. Dodson argues that the SAMCs' opinions "allowed for six hours of sitting in an eight-hour workday, and *less than* two hours of standing and walking in an eight-hour workday," thereby precluding her from any full-time work. Pl.'s Mem., at 11, 13 (emphasis added); Pl.'s Reply, at 3. In comparison, the ALJ found that Dodson could "sit for *slightly more* than 6 hours and stand or walk for *slightly less* than 2 hours in an 8-hour workday." Tr. 20 (emphasis added). Properly framed, Dodson asserts the ALJ erred by not adopting the identical language used by the SAMCs in their RFC determinations, and thereby improperly substituted her lay opinion.

Initially, the court notes that Dodson does not accurately state the sit/stand limitations in the SAMCs' opinions; Dodson omitted a key word (i.e., "about") in her description of both opinions. *Compare* Tr. 66, 78, *with* Pl.'s Mem., at 11, 13; Pl.'s Reply, at 3. Both SAMCs, Dr. Reid and Dr. Post, opined that Dodson could stand and/or walk for *slightly less* than two hours in an eight-hour workday and sit *about* six hours in an eight-hour workday. Tr. 66, 78 (emphasis added). The ALJ may reasonably interpret language in medical opinions, and a reasonable reading of the SAMCs' RFC determinations shows they allowed for a full eight-hour workday. Tr. 66, 78; *see Tankersley v. Astrue*, 245 F. App'x 830, 833 (10th Cir. 2007) (finding ALJ "reasonably interpreted" ambiguous medical opinion's sit/stand limitation, which included checked boxes limiting claimant to "stand and/or walk less than two hours in an eight-hour workday" and left choices indicating capability to sit "less than" or "about" six hours blank, to mean that claimant

14

could sit more than six hours and therefore complete an eight-hour workday by alternating standing and sitting). Thus, the ALJ's RFC determination includes a reasonable interpretation of the SAMCs' sit/stand limitations and is proper.

In addition, the ALJ, in interpreting the SAMCs' opinions, performed the precise role prescribed for her by the SSA. The ALJ—not a physician—bears the responsibility for determining a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Where enough evidence exists in the record "to support the ALJ's conclusions as to various aspects of the residual functional capacity finding, those conclusions are not reversible simply because they are not drawn word for word from specific medical opinions in the record." *Conkle v. Comm'r of Soc. Sec.*, No. 2:14-CV-0180, 2015 WL 1046197, at *6 (S.D. Ohio Mar. 10, 2015).

Here, despite Dodson's claims that the ALJ failed to adequately explain her decision to afford "great weight" to the SAMCs' opinions, the record demonstrates that in her analysis of the SAMCs' opinions, the ALJ specifically found that such "assessments are consistent with the medical evidence of record including evidence subsequently submitted into the record." Tr. 22. The ALJ appropriately weighed and considered the SAMCs' opinions, and compared them to the medical evidence of record and her own RFC determination. The ALJ also noted the reasons for, and cited record evidence to support, adding her own restrictions in the RFC (i.e., the addition of a cane when walking and foot control limitations to compensate for Dodson's "slightly worsened condition"). Tr. 22. Here, as previously discussed, substantial evidence supports the ALJ's RFC determination. The ALJ therefore did not err in affording "great weight" to the SAMCs' opinions.

*See St. Clair v. Berryhill*, No. 4:16-CV-1100-A, 2017 WL 3332260, at *6–7 (N.D. Tex. July 19, 2017) (finding ALJ did not err in giving weight to SAMCs' opinions in the absence of "reliable, well-supported medical evidence" from claimant's treating physicians). Dodson has failed to meet her burden to show that substantial evidence does not support the ALJ's physical RFC determination, and her appeal on this point of error should be denied.

### B. Substantial evidence supports the ALJ's decision to include no mental limitations in the RFC.

Dodson next argues that the ALJ should have included mental limitations in the RFC. Pl.'s Mem., at 14–15, 20–22; Pl.'s Reply, at 3–5. For the following reasons, the district court should determine that the ALJ did not err in choosing not to include any mental limitations in the RFC.

#### 1. *The ALJ did not err in finding Dodson's mental limitations to be non-severe.*

The court initially observes that in Dodson's original brief, she asserts that the ALJ erred in assessing her mental impairments as non-severe. Pl.'s Mem., at 19–20. In her reply brief, however, Dodson claims she was not making such an argument, but simply contending that the ALJ erred by failing to include any mental limitation in the RFC. Pl.'s Reply, at 3–4. The court will examine both points, starting with Dodson's argument that the ALJ erred by concluding her depression, anxiety, and social phobia are non-severe impairments. Def.'s Response, at 6.

The Fifth Circuit has established that a claimant's impairment is not severe only when it constitutes a "slight abnormality having *such minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (emphasis added). "An impairment causing any interference with work ability, even minimal interference, is a severe impairment under *Stone*." *Morris v. Astrue*, No. 4:11–CV–631–Y, 2012 WL 4466144, at *1 (N.D. Tex. Sept. 27, 2012); *see also Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009)

("*Stone* provides no allowance for a minimal interference on a claimant's ability to work."). The determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Stone*, 752 F.2d at 1104. The SSA has promulgated additional regulations for assessing the severity of a claimant's mental impairment. *See, e.g.*, 20 C.F.R. § 404.1520a. These regulations provide for the use of a "special technique" in evaluating mental impairments. *Id.* This technique requires that an ALJ identify each mental impairment, rate the degree of functional limitation resulting from each impairment in four broad functional areas,[2] and use those ratings to determine the severity of each impairment. *Id.* The regulations also mandate that the ALJ document her application of the special technique to the claimant's mental impairments. § 404.1520a(e). Violation of a regulation constitutes reversible error and requires remand only when a reviewing court concludes the error is not harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

The ALJ determined that the medical evidence demonstrated Dodson had mental impairments of depression, anxiety, and social phobia. Tr. 16. The ALJ then found that those impairments "do not interfere with or cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore not severe." Tr. 16, 18. The record reflects that the ALJ utilized the SSA's special technique for evaluating mental impairments, and then documented her application of the four factors to conclude that Dodson's mental impairments are not severe. Tr. 18. The ALJ determined that Dodson's depression, anxiety, and social phobia present: (1) mild restrictions in activities of daily living because Dodson reported herself as being independent in daily living during her consulting examinations; (2) no more than mild limitations in social functions because Dodson regularly interacted with family and did not allege any

---

[2] The four functional areas include: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

17

difficulty getting along with others; (3) no more than mild limitations in concentration, persistence, or pace, as Dodson submitted no evidence she has trouble with memory or concentration; and (4) no episodes of decompensation because Dodson had not been hospitalized for psychiatric treatment. Tr. 18. The court further notes that the ALJ's findings in these four functional areas are consistent with SAMC Dr. Post's psychiatric findings.[3] Tr. 76 (opining Dodson had mild restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in concentration, and no episodes of decompensation).

Consistent with SSA policy and its regulations, the ALJ correctly found that Dodson's mental impairments are not severe. *See* § 404.1520a(d)(1) (generally finding that a mental impairment is not severe if the degree of limitation in the functional areas is "none" or "mild," unless "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities"); *see also Stone*, 752 F.2d at 1101. Here, Dodson has referenced no evidence supporting the notion that her mental impairments have more than a minimal effect on her ability to work. Tr. 19–20. Though she points to the depressive symptoms she has suffered (i.e., anhedonia, tearfulness, and despondent affect), this evidence merely shows that Dodson suffered from anxiety and depression, not that such mental impairments caused more than a minimal limitation on her ability to work. Tr. 20. Indeed, the record shows Dodson continued working after being diagnosed with depression. *See* Tr. 287 (Dodson reported that she worked at an assisted living facility from 1991 through October 2011 and as a secretary at a home health care provider from October 2011 through February 2012); Tr. 333 (Dr. Dunn's treatment notes show he prescribed Celexa for Dodson's depression on March 2, 2011). The ALJ therefore did not err in finding Dodson's mental impairments to be non-severe. *See Hudspeth v. Astrue*, No.

---

[3] Dodson does not challenge this determination.

4:09-CV-156-Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010) (finding the ALJ did not err in determining claimant's mental impairments to be non-severe because claimant failed to offer evidence that such impairments caused more than a minimal limitation in her ability to work); *see also Hammond v. Barnhart*, 124 F. App'x 847, 853 (5th Cir. 2005) (affirming non-severity finding despite a diagnosis of "major depressive disorder").

In addition, the ALJ thoroughly considered the entire record—including all of Dr. Dunn's records of Dodson's treatment—to support her determination that Dodson's mental impairments are non-severe. Tr. 16–18. The ALJ acknowledged that Dr. Dunn has "conservatively managed" Dodson's mental health issues since 2010. Tr. 16. The records show Dodson reported she socializes with friends and family and attends church. Tr. 180, 266. She also reported she is able to complete daily activities, such as grocery shopping, getting dressed, and bathing (with the assistance of her husband). Tr. 415, 517. Additionally, Dodson has taken Celexa and Paxil to treat her depression. Tr. 333 (noting Dodson takes "Celexa for her depression"); Tr. 335; Tr. 339 ("The patient is doing much better on Celexa"); Tr. 416; Tr. 617 (listing Paxil as medication). Dr. Dunn noted Dodson was tearful during some of her examinations and her emotional affect was sometimes despondent. Tr. 333 (Dr. Dunn noted Dodson was tearful); Tr. 418 (Dr. Lindsey noted Dodson's emotional affect was despondent on April 11, 2012); Tr. 573 (Dr. Lindsey noted Dodson was tearful at times during his examination and her emotional affect was anxious and despondent). At several appointments with Dr. Dunn, however, Dr. Dunn also noted Dodson was fully oriented, showed appropriate affect and demeanor, and exhibited good judgment and insight. Tr. 418, 559, 562, 579. Dr. Dunn's treatment notes in the record also show Dr. Dunn did not complete a mental status examination for most of Dodson's visits. Tr. 552–53, 557–62, 557–602.

To the extent the record reflects any conflicting evidence that Plaintiff's mental impairments are severe, the record as a whole provides substantial evidence in support of the ALJ's finding that such impairments are not severe. *See Zimmerman*, 288 F. App'x at 937 (noting that the record contained some conflicting evidence, but finding that the ALJ's conclusion about the claimant's mental impairment was supported by substantial evidence); *Menchaca v. Barnhart*, 179 F. App'x 215, 216 (5th Cir. 2006) ("[I]f the Commissioner's conclusion is supported by substantial evidence, we must affirm it, even in the face of conflicting evidence."). Substantial evidence supports the ALJ's decision that Dodson's mental impairments are not severe.

Accordingly, the ALJ did not err in determining Dodson's mental impairments as non-severe and substantial evidence supports her findings.

### 2. The ALJ did not commit reversible error by failing to assess limitations addressing Dodson's mental impairments in the RFC.

Dodson also argues the ALJ should have included mental limitations in the RFC to account for her mild restrictions in activities of daily living, social function, and concentration. Pl.'s Mem., at 20–22; Pl.'s Reply, at 3–5. In support of this proposition, Dodson cites regulatory language stating the ALJ's RFC determination should consider all of the claimant's "impairments and limitations that affect [her] ability to function in the workplace, *even those that are non-severe*." Pl.'s Mem., at 15; *see* 20 C.F.R. 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.").

Dodson's contention that the ALJ failed to consider her depression, anxiety, and social phobia is without merit. In her findings, the ALJ specifically stated:

> The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the

broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Tr. 18. In other words, the ALJ evaluated the effects of Dodson's depression, anxiety, and social phobia under the SSA's special technique, and determined that the impairments did not have more than a mild effect on Dodson's ability to engage in work-related activities. *Id.* Thus, the ALJ was not required to include any mental impairments in the RFC. *See Stinnet v. Berryhill*, No. 4:16-CV-00252-Y-BL, 2017 WL 1403660, at *3 (N.D. Tex. Mar. 13, 2017) (rejecting argument identical to that of Dodson's and finding that the ALJ was not required to include mental impairment limitations in the RFC because the ALJ had determined claimant's mental limitations did not affect his ability to work); *Blancett v. Comm'r of Soc. Sec. Admin.*, No. 7:11-CV-00106-O(BF), 2012 WL 4027543, at *12 (N.D. Tex. Aug. 27, 2012) (holding claimant's argument that ALJ failed to include non-severe limitations in RFC was without merit where the ALJ "specifically stated that she considered the effects of all of the non-severe impairments," explained that claimant's impairments did not meet the "B" or "C" criteria, and determined the mental impairments did not result in any work-related limitations); *Taylor v. Astrue*, Civ. No. 09-281-P-H, 2010 WL 2025060, at *2 (D. Me. May 18, 2010) (citing §§ 404.1520a and 416.920a to determine that "[i]f a mental impairment is judged to be severe but not to meet or equal a Listing, assessment of a claimant's mental RFC is required; *if it is judged non-severe, no mental RFC assessment need be made*") (emphasis added)).

Although Dodson asserts that the ALJ should have questioned the VE about her non-severe mental limitations (Pl.'s Mem., at 21–22), an ALJ is not required to ask such questions when a claimant's "non-exertional impairments do not significantly affect [her] residual functioning capacity." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Here, as previously discussed,

the ALJ determined that Dodson's mental impairments were not severe enough to significantly affect her ability to work. Tr. 16–18. The ALJ therefore was not required to include those impairments in the RFC nor was she required to ask the VE questions concerning those impairments. *See Harris v. Comm'r of Soc. Sec. Admin.*, No. 6:16-CV-00403-JDL, 2017 WL 3480154, at *5 (E.D. Tex. Aug. 14, 2017) (finding the ALJ was not required to pose questions to the VE regarding claimant's non-severe mental impairments that had no effect on claimant's ability to work, nor was he required to include those non-severe impairments in the RFC).

Even if the ALJ should have asked the VE about Dodson's mental limitations, her failure to do so is not reversible error. An ALJ's failure to question a VE about a specific limitation only constitutes reversible error if the claimant's representative "does not have a chance to correct or suggest changes to any deficiencies in the ALJ's questions." *Id.* (citing *Wise v. Barnhart*, 1001 F. App'x 950, 951 (5th Cir. 2004)). Here, Dodson's representative did indeed cross-examine the VE about mental limitations consistent with those Dodson suffers. Tr. 54–57. Thus, if the ALJ was required to pose questions to the VE concerning Dodson's non-severe mental limitations, the error was harmless.

Accordingly, Dodson has failed to show that the RFC is the result of a legal error or unsupported by substantial evidence with regard to Dodson's non-severe mental impairments.

### C. The ALJ made a supported credibility finding.

Finally, Dodson asserts that the ALJ erred in her credibility assessment when she failed to consider Dodson's strong work history. Pl.'s Mem., at 22–24. Dodson contends that the regulations require the ALJ to consider a "claimant's historical willingness to work in the credibility finding." *Id.* at 23. The Commissioner counters that a claimant's work history is but

one factor to consider when analyzing a claimant's credibility. Def.'s Resp., at 7. The court agrees with the Commissioner.

At the time the ALJ issued her opinion, Social Security Ruling (SSR) 96-7p[4] required the ALJ to follow a two-step process for evaluating Dodson's subjective complaints. SSR 96–7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). SSR 96–7p first requires the ALJ to consider whether the claimant had a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* If the claimant shows such an impairment, the ALJ then evaluates the persistence, intensity, and limiting effects of claimant's alleged symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. *Id.* When the ALJ determines that the claimant's statements concerning the intensity, persistence, or limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a credibility finding regarding the claimant's statements. *Id.*; *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648–49 (5th Cir. 1985)).

The ALJ must consider the entire record and a non-exclusive list of various factors in assessing a claimant's credibility, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment,

---

[4] Effective March 16, 2016, the SSA eliminated "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1020935, at *1 (S.S.A. Mar. 16, 2016). The ALJ in this case issued her opinion on May 27, 2015, making SSR 96-7p the relevant social security ruling to consider. SSR 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996). The ALJ properly analyzed Dodson's credibility under SSR 96-7p, including her use of the specific term "credibility." *See Mayberry v. Colvin*, No. CV G-15-330, 2016 WL 7686850, at *5 (S.D. Tex. Nov. 28, 2016) (noting that "[b]ecause the text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively, the Court would be disinclined to do so"). Even if SSR 16-3p applied retroactively, however, the court's recommendation concerning this issue would not differ.

other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any other measures used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c).

Although the ALJ must give specific reasons for his credibility determination, "the ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Clary v. Barnhart*, 214 F. App'x 479, 482 (5th Cir. 2007) (citing *Falco*, 27 F.3d at 163) (emphasis in original). The ALJ's credibility analysis is sufficient if it "makes clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005). Moreover, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *Falco*, 27 F.3d at 164. Indeed, because the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing," courts grant considerable deference to the ALJ's credibility determination. *Id.* at 164 n.18; *Newton*, 209 F.3d at 459.

In this case, although the ALJ found that Dodson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," she determined that Dodson's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible." Tr. 21. The ALJ discussed several of the enumerated factors, including the intensity of Dodson's alleged pain, and her symptoms, medication, treatment, and daily activities. Tr. 21. In her analysis, the ALJ also observed that the record does not support the profound limitations Dodson alleges. Tr. 21. Moreover, the ALJ noted that she considered Dodson's testimony at the hearing, along with the entire record in making her credibility determination. Tr. 21, 25.

Here, citing SSR 96-8p, SSR 96-7p, and 20 C.F.R. § 404.1529(c)(3), Dodson contends that the ALJ should have considered her exemplary work history when assessing her credibility. Pl.'s Mem., at 22. SSR 96-7p requires that the ALJ make credibility assessments based on all the evidence in the record, including "prior work record and efforts to work." SSR 96-7p. SSR 96-8p also identifies "[e]vidence from attempts to work" as a factor to consider when assessing a claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). Dodson, however, fails to recognize that the Fifth Circuit has not approved the rule of law that both the Second and Third Circuits have adopted, which requires that an ALJ afford a claimant "substantial credibility" based on her significant work history when claiming she can no longer work because of a disability. *McGee v. Astrue*, No. 2:10-CV-1826, 2012 WL 7456174, at *8–9 (W.D. La. Nov. 26, 2012) (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) and *Tayborn v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1984) in explaining that while the Second and Third Circuits accord substantial credibility to a claimant who boasts a long work history, and now claims a disability, the Fifth Circuit has not adopted that rule); *see also Lorah v. Comm'r of Soc. Sec.*, CIV. A. No. 14-0749, 2015 WL 4395351, at *7 (W.D. La. July 16, 2015) ("[W]hile claimant is correct that there is jurisprudence *from other circuits* holding that a claimant with a good work record is entitled to substantial credibility when claiming that she can no longer work due to a disability, that is not the case here.") (emphasis added)).

Because the ALJ considered Dodson's testimony in her credibility analysis, the ALJ did not fail to consider Dodson's work history.[5] The ALJ therefore did not violate SSR 96–7p or 20 C.F.R. § 404.1529(c)(3). *See Klaus*, 2016 WL 4573878, at *15 (finding that "although the ALJ

---

[5] A review of the hearing transcript reveals that during the hearing Dodson made the ALJ aware of her twenty-year work history twice. Tr. 37, 41 (Dodson's representative asked her how long she worked as at an assisted living facility and Dodson replied "I worked there nearly 20 years.").

did not characterize Plaintiff's work history as exemplary or specifically refer to it when addressing his credibility, the ALJ did not violate SSR 96-7p or § 404.1529(c)(3) in his consideration of Plaintiff's credibility" when he evaluated plaintiff's own testimony regarding work history); *Roberson v. Colvin*, No. 2:13–CV–197, 2015 WL 1408925, at *8 (N.D. Tex. Mar. 27, 2015) (finding no reversible error when ALJ did not expressly consider claimant's work history in his findings as "the failure to reference such in his findings does not mean he was not aware of the history").

Even if the ALJ erred by failing to consider Dodson's strong work history, any error is harmless because substantial evidence supports the ALJ's credibility determination. *See Nall v. Barnhart*, 78 F. App'x 996, 997 (5th Cir. 2003) (finding ALJ's alleged failure to include two of the SSR 96–7p factors in his analysis harmless because substantial evidence supported the ALJ's credibility determination). The ALJ expressly addressed most of the SSR 96–7p factors and gave sufficient reasons for finding Dodson's testimony partially credible, including that the objective findings in the record did not support Dodson's allegedly profound limitations. Tr. 20–22. Thus, the ALJ supported her credibility determination with substantial evidence. *See McGee*, 2012 WL 7456174, at *9 (holding substantial evidence supported the ALJ's determination that claimant's allegations were partially credible because the ALJ (1) considered the requirements of § 404.1529(c)(3) and (2) noted that the objective medical evidence did not support claimant's allegations); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) ("[S]ubjective evidence need not be credited over conflicting medical evidence."). Because substantial evidence supports the ALJ's credibility determination, even with the alleged omission of Dodson's work history, the ALJ's determination is entitled to deference.

For all of these reasons, the district court should find no error in the ALJ's credibility determination.

## V.  <u>Recommendation</u>

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Dodson's Complaint with prejudice.

## VI.    <u>Right to Object</u>

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: February 12, 2018

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**